Rowe, J.
This is an action of tort for deceit alleging that the plaintiff is successor in title and present holder of two promissory notes executed and delivered by the defendant to the United States Bond and Mortgage Corp. (hereinafter called the United.) The declaration alleges fraud perpetrated upon the United as' result of alleged forgery of the signature of a maker on said notes, to the damage of the plaintiff. The defendant’s answer is a general denial, discharge in bankruptcy, statute of limitations and res judicata.
The trial judge found for the plaintiff in the sum of $24,500. The defendant claims to be aggrieved with reference to rulings adverse to him on requests for rulings. The requests and rulings need not be set out seriatim.
There was evidence tending to show that in 1930 and 1931 the defendant borrowed money of the United on two *41 joint and several promissory notes secured by mortgages on real estate. The makers appearing on the notes purported to be the defendant Anna N. Johnson, his wife, and Sarah A. Johnson, his mother. The name of Anna was a forgery.
The defendant filed a voluntary petition in bankruptcy in 1935 and listed on his schedules the United as a creditor in the amount of the notes. He received his discharge in 1936.
The United had borrowed money of the plaintiff and as collateral security therefor had assigned these notes and mortgages to the plaintiff. The plaintiff had placed a value on the notes of $24,000.
The plaintiff had carried a policy of forgery insurance which was in force at the time the notes were placed with the bank as collateral and after an action in contract brought in 1940 and hereinafter described, the plaintiff reported the matter to the insurance company and made claim upon the policy. In 1941 the insurance company paid the plaintiff $18,388 and simultaneously the plaintiff executed and delivered-to the insurance company a “loan receipt” which reads as follows:
LOAN RECEIPT.
Received from Underwriters who executed Lloyd’s Form J (A) Policy No. D-30941, the sum of Eighteen Thousand Three Hundred Eighty-eight and 00/100 ($18,388.00) Dollars as a loan and repayable only to the extent of any net recovery we may make from any person or persons, corporation or corporations, on account of loss sustained through or as a result of the f orgery of the name of Anna N. Johnson upon a mortgage note in the sum of $7,900.00, dated May 5th, 1930, payable to the United States Bond & Mortgage Corporation of Massachusetts, or Order, at the rate of $100.00 per month, from May 1st, 1930, with interest thereon at the rate of 6%, except in the event of de *42 fault when interest accrued at 10% and the forgery of the name of Anna N. Johnson upon a mortgage note in the sum of $11,788.00, dated October 22nd, 1981, payable to 'the order of the United States Bond & Mortgage Corporation of Massachusetts, or Order, at the rate of $100.00 per month from January 2nd, 1932 with interest thereon at the rate of 6%, except in the event of default when interest accrued at 10%, or from any insurance effected by such person or persons, corporation or corporations.
As security for such repayment, we hereby pledge to said Underwriters who executed Lloyd’s Form J (A) Policy No.- D. 30941, the said recovery and deliver to them all documents necessary to show our interest in said property and we agree to enter and prosecute suit against such person or persons, corporation or corporations on account of said claim for said loss, with all due diligence, at the expense and under the exclusive direction and control of said Underwriters who executed Lloyd’s Form J (A) Policy No. D 30941.
THE NATIONAL SHAWMUT BANK OF BOSTON,
By: W. E. Bobde-u, Vice Pres.
The plaintiff in 1940 brought an action of contract against the present defendant and Anna upon the notes. After a trial on the merits a finding was made by the court for both defendants, the court finding specially that the signatures of Anna were forgeries. The trial judge in the present case found that neither the payee nor the plaintiff knew until 1940 that the signatures of Anna were forged. He also found that the notes came into the possession of the plaintiff for consideration before maturity and without knowledge on the part of the plaintiff of the forgeries, and found for the plaintiff.
The plaintiff is a holder in due course of the notes and hence may properly bring this action of tort, even though the United was the payee. As was said in Peoples National Bank v. Dixvell, 217 Mass. 436, 437, “It is urged, however, *43 by the defendants, that even if that be so, the liability is to Mitchell alone, the payee of the note, and that the right to enforce it has not been assigned by him. But the representations are made in the document itself, which upon its face is negotiable in form. It is to be assumed that the defendant contemplated that it might pass into the hands of parties taking the same in reliance upon the statements therein contained, and that the defendants intended that in such a case the statements should stand as made to any rightful holder; or in other words that the statements are to be regarded as continuous.”
As the plaintiff did not learn of the forgeries until 1940 the trial judge could find that the present action was ,brought within the required time. G. L. (Ter. Ed.) e. 260 §12.
The defendant contends that the “loan receipt” is not really a loan but is an attempted assignment of an unassignable action of tort for deceit, with an agreement that the plaintiff shall prosecute the case under the direction and control and in effect for the benefit of the insurance company as to amount of net recovery, and that it is a method adopted for the purpose in reality of circumventing the law relative to assignments. In a word, the contention is that the insurance company is in reality the plaintiff in this case.
But that is not the real situation here. The case falls within the doctrine of Luckenbach v. McCahan Sugar Refining Co., 248 U. S. 139, in which it was held that sums paid over under a loan receipt similar to the one in the case at bar should be regarded as loans or conditional payments and not as absolute payments of the insurance.
The defendant contends that his discharge in bankruptcy is a bar to the present action. Section 17. of the Chandler Act provides “ (a). A discharge in bankruptcy shall release *44 the bankrupt from all his proveable debts, whether in full or in part, except such as * * *. 2. All liabilities for obtaining money or property by false representations.”
The defendant urges that inasmuch as the United did not rely wholly upon the forged signature the money loaned by it was not obtained by the defendant solely by false pretenses or false representation and that therefore the discharge in bankruptcy in 1936 released the defendant.
But the above section of the Act does not expressly require that one must rely solely upon the fraudulent part of the transaction for the section of the statute to be operative, and to so construe it, would greatly impair if not destroy the practical application of the section.
As to the defendant’s claim of res judicata: The defendant contends that since the plaintiff sued the defendant in 1940 in an action of contract on the notes, that it thereby made an election by which it is now barred from bringing the present action in tort. The finding of the court in the contract action is made a part of the report. It appears that in a single action the plaintiff sued the present defendant arid Anna. A finding was made for both defendants with a special finding that Anna’s name was a forgery.
The obligation of the present defendant on the notes was a joint as well as a several obligation. But the plaintiff in the contract action could not recover against Anna because she was not a party to the notes as her name was only a forgery.
“The doctrine of election of remedies rests upon the assumption that two or more inconsistent and alternate remedies exist.” Burke v. Willard, 249 Mass. 313, 317. As the plaintiff did not have the remedy of the joint obligation of the present defendant and Anna on the notes which the contract of the present defendant purported to give, there was no election of remedies by reason of the plaintiff bring *45 ing the above action on the notes, which action must in the end result in a finding in favor of Anna. That is, this remedy which the present defendant’s contract purported to give, did not in reality exist, and so there was no election by bringing the contract action against the present defendant and Anna which would prevent the bringing of the present action.
The defendant contends that there is an inconsistency in the allowance of the three following plaintiff’s requests:
“12. If your honor finds for the plaintiff, then the measure of damages is the full amount of the note in question.
“13. The measure of damages is the difference between the value of the notes as they were represented by the defendant to be and the actual value of the notes at the time of delivery by the defendant to the United States Bond and Mortgage Corp: of Massachusetts
“14. As a matter of law, the measure of damages is the difference between the value of the notes delivered by the defendant and the value of said notes as they were represented to be.”
The defendant says that request 12 was erroneously granted and that requests 13 and 14 were rightly granted.
We are of the opinion that there was no error in the granting of these requests. The total number of requests filed by both parties was 73, of which some might be regarded as requests for findings of fact rather than for rulings of law.
The 12th request may be fairly construed as a request for a finding of fact that the plaintiff was entitled to the full amount of its claim as to damages, namely the full amount of the notes. It is somewhat analogous to Castano v. Leone, 278. Mass. 429, in which case it was held that one of the defendant’s “requests for rulings” that the defendant was not guilty of ordinary negligence was a request for finding of fact, or analogous to Ashapa v. Reed, *46 280 Mass. 514. In the latter case, it was held that a motion that the court find a verdict for the defendant was a request for a finding of fact.
In the case at bar the 13th and 14th requests may be properly interpreted as being requests for the rulings of law set for guidance and that by applying these rules a finding be made in accordance with the 12th request for finding of fact for the full amount of the notes.
But even if these three requests be all regarded as requests for rulings of law that does not mean that the defendant should now be granted a new trial. The defendant complains that the 12th request is inconsistent with the 13th and 14th requests. If the judge granted requests for rulings which called for two contrary theories on ascertaining damages that would be so. But that is not the whole situation here.
The question of inconsistency between a special finding and a general finding should be raised by a motion for a new trial. Duralith Corp. v. Leonard, 274 Mass. 397, 401. A question of inconsistency between rulings and findings may also be raised upon a motion for a new trial. Korb v. Albany Carpet Cleaning Co., 301 Mass. 317, 318. Beck v. Warren Institution for Savings, 312 Mass. 315.
In the Beck case, supra, the trial judge granted a defendant’s request for ruling which would have prevented a finding for the plaintiff and then he found for the plaintiff. The defendant excepted and also filed a motion for a new Trial on the ground of inconsistency between the ruling and the finding. The trial judge, on a motion for a new trial, corrected his action upon the ruling and -allowed the finding for the plaintiff to stand. In overruling the exceptions which had been taken it was said that this- action of the trial judge corrected the pre-existing inconsistency.
*47 In the case at bar, if there is any inconsistency, it could have been corrected on a motion for a new trial. If the requests are considered as requests for two different and inconsistent rules of law as to the measure of damages and were both allowed, there would be a patent inconsistency which it would hardly be thought was the intended result by a judge of experience. In Anderson v. Beacon Oil Co., 281 Mass. 108, 110, it is said that “to obtain from an Appellate Court the correction of erroneous rulings is only part off the purpose of the law in giving right to take exceptions. An aim equally important is to warn the trial judge of his error so that he may correct it.”
If an inconsistency between two findings and an inconsistency between findings and rulings can be corrected on a motion for a new trial there is no reason why a like procedure cannot be maintained relative to an inconsistency between rulings.
In the instant case, from the defendant’s stand point there was a manifest error. But that error would be subject to correction by the trial judge on a motion for a new trial. If the error was not then corrected, the defendant could still preserve his rights. Instead of so doing, the defendant remained dormant until the case had proceeded beyond the court of first instance where the error could have been corrected in the present trial, and permitted the case to proceed into an appellate court where if the defendant’s contention is correct, there must be a new trial ordered.
In these circumstances there is no prejudicial error existing with reference to requests, 12, 13 and 14.
The defendant contends that the plaintiff has not proven any damage, the rule of damage being “the difference between the actual value of the property at the time of the purchase and its value if the property had been what it *48 was represented to be.” Morse v. Hutchins, 102 Mass. 439, 440. We are of the opinion, however, that there was such evidence.
There was evidence that the notes were represented to be worth their face value as the delivery of the notes calling for stated amounts of payment was a representation by the defendant that they were worth the amount so 'stated since “prima facie the present worth of a chose in action calling for an unconditional payment of a sum of money is the amount of the obligation.” Restatement of the Law, 4 Torts, S. 911g.
There was also evidence of the actual value of the notes when issued. While it has been said that “presumptions do not run backwards” still that is not a rule of law and if there is a rational probability that proof of a later fact would tend to show the existence of a former fact, such evidence may have a bearing on the question of the existence of the former fact. Beacon Trust Co. v. Wright, 288 Mass. 1.
As to Sarah: the defendant in his brief says that she died in 1939 leaving no estate. There is nothing in the record which suggests any change in the financial condition of Sarah from that existing at the time of her death, namely that of having no property.
As to the defendant: he was in bankruptcy in 1935. However, he gave no testimony as to his financial condition at the time of the delivery of the notes nor did he introduce any other evidence of such condition from facts. which would be naturally within his peculiar knowledge on that point.
As to Anna: her signature having been forged was of course worthless.
Under the cumulative force of all the circumstances of the makers of the notes, the defendant, his wife and his mother, *49 we cannot say that there was not a scintilla of evidence which would justify the conclusion of the lack of value of the notes when issued. The judge came to a definite conclusion on that point and we cannot say as matter of law that he was wrong.
The defendant suggests on the measure of damages that the mortgages “would have some value.” However probable that may be a matter of fact, it is not so as a matter of law.
We have here considered the various contentions of the defendant without a too critical examination of the record as to whether all these contentions are open on the record as the report is presented to us. There exists no prejudicial error.
Report dismissed.